1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SONIA MAREE MILLER,                        No.  2:21-cv-0757-JAM-CKD PS

12                Plaintiff,

13        v.                                    ORDER AND FINDINGS &
                                                RECOMMENDATIONS ON
14   SACRAMENTO CITY UNIFIED                    MOTIONS TO DISMISS
     SCHOOL DISTRICT, et al.,
15                                              (ECF Nos. 12, 18, 21)
                  Defendants.
16

17

18            Presently before the court are three motions to dismiss, brought by each of the three

19   defendants in this action:  Sacramento City Unified School District ("SCUSD" or "School

20   District"), Sacramento City Teachers Association ("SCTA" or "Union"), and Mr. Norman

21   Hernandez.[1]  (ECF Nos. 12, 18, 21.)[2]  Plaintiff filed a single-paragraph opposition to all three

22   motions,[3] and the School District and defendant Hernandez filed replies.  (ECF Nos. 25-27.)  The

23   ───────────────────

24   [1] Because plaintiff is self-represented, all pretrial matters are referred to the undersigned pursuant
     to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

25   [2] Defendant Hernandez re-filed his motion to dismiss (ECF No. 12) on August 6, 2021, replacing
26   the original improperly noticed motion filed on August 5, 2021 (ECF No. 10).  Defendant
     SCUSD filed a corrected motion to dismiss (ECF No. 21) on September 1, 2021, replacing its
27   original motion filed on August 31, 2021 (ECF No. 17).

28   [3] Plaintiff also included in her objections to the undersigned's earlier findings (*cont'd*)

                                                1

1   motions were heard remotely on October 13, 2021.  (ECF No. 28.)  For the following reasons, the

2   undersigned recommends GRANTING all three motions, dismissing all claims against defendants

3   Hernandez and the Union without leave to amend, and dismissing all claims against the School

4   District with leave to amend.

5   **BACKGROUND**

6        **A.  The Complaint**

7        Plaintiff, who is a certificated special education teacher, filed this action on April 27, 2021

8   against her employer, SCUSD; her union, SCTA; and two administrators at a charter school

9   where she was assigned to work for several years.[4]  (ECF No. 1 at 2, 7-9.)  The caption of the

10  complaint references at least five anti-discrimination laws: "Complaint of Discrimination (Civil

11  Rights Act of 1964) - Title VII, the Americans with Disabilities Act, the Genetic Information

12  Nondiscrimination Act, or the Age Discrimination in Employment Act and Equal Pay Act."  (Id.

13  at 7.)  On the attached form complaint, plaintiff checked boxes indicating that four of these

14  provisions formed the basis for the court's jurisdiction: (1) Title VII of the Civil Rights Act of

15  1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; (2) the Age Discrimination in Employment Act

16  ("ADEA"), 29 U.S.C. § 621 et seq.; (3) the Americans with Disabilities Act of 1990 ("ADA"),

17  42 U.S.C. § 12112 et seq.; and (4) the Equal Pay Act, 29 U.S.C. § 206 et seq.  (ECF No. 1 at 3.)

18  In the body of the complaint, however, plaintiff asserts just two labeled causes of action under

19  Title VII and the Equal Pay Act.  (Id. at 23-24.)

20       Plaintiff's complaint contains a 14-page disjointed statement of facts regarding a host of

21  issues she has had with the School District and the Union over her two decades of teaching in the

22  district.  (Id. at 9-23.)  She also attaches over 200 pages of exhibits related to these various issues.

23  (Id. at 27-254.)

24  ───────────────

25  and recommendations arguments in opposition to defendant Hernandez's motion.  (ECF No. 15
    at 7-8.)  Although that was not the proper vehicle for plaintiff's opposition, the court has

26  considered those arguments nonetheless, and defendant Hernandez addresses them in his reply
    (ECF No. 27 at 2-4.)

27
    [4] After failing to serve the second administrator, Judy Yang, plaintiff voluntarily dismissed her

28  from the action.  (ECF Nos. 23, 24.)

1    Plaintiff alleges that she has worked for the School District since 2003 as a certificated
2    special education teacher.  (Id. at 3, 7-8, 22, 25.)  Although she was continuously employed by
3    the School District (id. at 3, 16), for the school years from 2016 to 2019 she was assigned to work
4    at two charter schools, one being Sol Aureus College Preparatory School (id. at 9, 18).  Defendant
5    Hernandez is an "Administrator" at Sol Aureus,[5] and the SCTA is a labor organization that
6    "represents certificated and classified employees of SCUSD," like plaintiff.  (Id. at 2, 8.)
7    Plaintiff describes an overwhelming number of issues in her complaint, alleging as
8    follows:
9    • In late spring 2019, she discovered a school website listing her as a teacher and containing
10   text in Latin that supposedly referred to plaintiff as being pregnant.[6]  (Id. at 10, 39-44.)
11   Her requests to take down the website and to discover who created it went unanswered,
12   causing her post-traumatic stress.  (Id. at 11.)
13   • Defendant Hernandez made "negative comments" about plaintiff in publicly viewable
14   board meeting minutes, constituting "slander and public defamation"; and in September
15   2016 board minutes, he made inaccurate statements regarding the school's special
16   education procedures.  (Id. at 11-13.)  She received "no response back from SCUSD or
17   SCTA" regarding her concerns with the board meeting minutes.  (Id. at 12.)
18   • For most of the years she worked at the charter schools, her caseload was too high, with
19   40 students instead of the 28 she should have had.  (Id. at 14.)
20   • In spring 2019, the SCTA provided plaintiff with an employment attorney at no cost, but
21   the attorney "ignored" plaintiff's concerns about the website and board meeting notes,
22   saying she could only help plaintiff with resolving her issues with having too heavy a
23
24   ───────────────
     [5] At the hearing on the motions to dismiss, plaintiff indicated that Mr. Hernandez oversees Sol
25   Aureus, hiring the non-SCUSD teachers who teach for that charter school, and assigning
     classrooms and such.
26
     [6] Plaintiff attaches a screenshot of a Google translation of the Latin text to English, showing
27   below plaintiff's name and title a random combination of Latin words—including the word
     "gravida," meaning "pregnant"—of the sort commonly used as text placeholders in website
28   templates.  (ECF No. 1 at 40-41.)

3

caseload.  (Id. at 11.)  Plaintiff felt that the attorney did not "pursue[] appropriate legal restitution and/or resolutions for [her] employment concerns."  (Id.)

- She and another SCUSD, unionized teacher "did not get the same custodial services as the rest of the school," having to take out their own garbage and to contend with cramped quarters, wobbly desks, and noisy surroundings.  (Id. at 13.)

- She was "uncomfortable" with defendant Hernandez recording "the workspace" with a Nest camera, which he said was for monitoring the parking lot.  (Id.)

- "On one day," she found an "unknown orange substance" in her purse, which she interpreted as an attempt to kill her because a lab report revealed some sort of controlled substance.  (Id. at 13-14.)

- In spring 2019, she discovered "an unknown hack" of her work computers.  (Id. at 17.) She found an unrecognized file bearing her first name "Sonia 2017" and containing hundreds of items that she could not access.  The School District continually refused to release the file to her, which she states is "clearly discrimination and exclusion."  (Id. at 17-18.)

- In April 2019, she went on leave due to stress.  Instead of allowing plaintiff to pick up the rest of her personal belongings from Sol Aureus, defendant Hernandez "threw" her items in front of the school.  (Id. at 15.)  A Union representative advised her that this was a violation of her teacher's contract.  (Id.)

- She also was not allowed to remove her Apple ID and personal files from a MacBook computer she had been using for several years.  (Id. at 20.)  The Union said this was a violation of plaintiff's privacy and she should be allowed to remove it, but the Union "do[es]n't enforce anything" and "[n]othing gets resolved appropriately."  (Id.)

- "There were continued issues of getting paid on time and [in] the correct amounts this school year" (presumably referring to the 2020-2021 year), as there had been since 2018. (Id. at 19, Exs. W & X.)

////

4

- She received "inconsistent" W-2 tax forms for 2017 and 2018, which neither the School District nor the Union would help her resolve.  (Id. at 16.)  Her requests for paystubs and pay scales have gone ignored, or endlessly transferred across various entities.  (Id.)
- She was not given credit for a whole year of work when she was first hired in December 2003 and carried a full-time caseload.  (Id. at 22-23.)
- Her 1095-B healthcare insurance tax form for 2019 "shows fraud."  (Id. at 17.)
- She found incorrect information about herself and unauthorized computer profiles for herself, which the School District and the Union did nothing to resolve.  (Id. at 22.)
- She was "[d]enied employment opportunities" when she interviewed for several different positions within the district but received no offers of employment.  (Id.)

On the form complaint, plaintiff checked boxes asserting discrimination in the form of failure to promote, failure to accommodate a disability, unequal terms and conditions of employment, and retaliation, along with other acts that she listed as "public defamation, privacy violations, financial fraud, nondisclosure."  (Id. at 4.)  On the form, plaintiff further indicated that this discrimination occurred from December 8, 2003 (her original date of hire) through the present.  (Id. at 4, 8.)  In the fields for bases of discrimination, plaintiff indicated that the discrimination was based on race ("Mixed Race: Japanese/White"); gender ("Female"); religion ("Catholic"); age (born 1972); and disability or perceived disability ("ADHD").  (Id. at 4.)

Regarding exhaustion of administrative remedies, plaintiff stated that she filed an EEOC charge online on October 23, 2020 and was issued a Notice of Right to Sue letter on January 27, 2021.  (Id. at 5.)  Plaintiff attaches a copy of the Right to Sue Letter, under an exhibit cover page listing "1.) Title VII discrimination" and "2.) Equal Pay."  (Id. at 27, Ex. A.)  The Right to Sue Letter shows that a copy was sent to one charged party: the School District.  (Id.)

**B.  Procedural History**

The School District and the Union were granted extensions of time to respond to the complaint (ECF Nos. 7-9), and on August 5, 2021, defendant Hernandez filed the instant motion to dismiss (ECF No. 10) which he promptly re-noticed for hearing before the undersigned (ECF

No. 12).  Nevertheless, on August 6, 2021, plaintiff moved for default judgment against all defendants.  (ECF No. 13.)  On August 11, 2021, the undersigned recommended denying plaintiff's motion because no default had been entered and no defendant had yet failed to timely respond to the complaint.  (ECF No. 14.)  Plaintiff filed timely objections to those findings and recommendations, which remain pending before the assigned district judge.  (ECF No. 15.) Plaintiff's objections also (improperly) contained two paragraphs of arguments in opposition to defendant Hernandez's motion to dismiss.  (Id. at 7-8.)  In response to plaintiff's objections, the undersigned permitted plaintiff to file a separate, more complete opposition.  (ECF No. 16.)

On August 31, 2021, the School District and the Union filed their instant motions to dismiss, with the Union's noticed for hearing two weeks after the School District's.  (ECF Nos. 17, 18.)  The next day, the School District filed a corrected motion to dismiss.  (ECF No. 21.)  In order to simultaneously hear all motions to dismiss, the court reset a hearing for the latest noticed date, informing plaintiff that she could file her opposition(s) on or before September 29, 2021—effectively granting her a two-week extension to prepare her opposition. (ECF Nos. 19, 22.)  On September 28, 2021, plaintiff filed a single-paragraph opposition.  (ECF No. 25.)  The School District and defendant Hernandez filed replies in support of their motions to dismiss.  (ECF Nos. 26, 27.)

**C. The Motions to Dismiss**

All three defendants move to dismiss plaintiff's complaint with prejudice, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defendant Hernandez argues that plaintiff's employment discrimination claims cannot be brought against him, since he is not alleged to be plaintiff's employer, and in any case plaintiff did not exhaust administrative remedies as to him; and any defamation claims plaintiff might be asserting against him would be time-barred.  (ECF No. 12 at 8-12.)  The Union argues primarily that plaintiff's few allegations against it, at best, amount to claims that the Union breached its duty of fair representation, and that such claims are preempted as lying solely within the jurisdiction of the California Public Employee Relations Board.  (ECF No. 18 at 7-11.)  The Union argues, in the alternative, that plaintiff fails to allege any facts to support a claim against the Union under the cited employment

6

discrimination statutes; that such claims were not administratively exhausted as to the Union; and that plaintiff's Equal Pay Act claim cannot be brought against the Union because it is not her employer.  (Id. at 11-13.)  Finally, the School District argues that plaintiff's "shotgun pleading" fails to provide notice of what claims are being asserted, fails to allege facts to support any of the discrimination claims, and that any potential discrimination claims are barred by their respective statutes of limitations.[7]  (ECF No. 21.1 at 5-9.)

Plaintiff's formal opposition states that she is "in strong opposition to all of the motions to dismiss" and believes she has "provided an abundance of evidence in [her] original complaint to substantiate the truth and facts regarding the discrimination and equal pay issues that [she has] experienced for two decades."  (ECF No. 25.)  Plaintiff's additional arguments in opposition (contained in her objections to the prior findings and recommendations) accuse defendant Hernandez of engaging in "very dangerous, potentially criminal behaviors"; "speak[ing] poorly about [plaintiff] and try[ing] to get [her] fired"; and mismanaging his school's Individualized Education Plans.  (ECF No. 15 at 7-8.)

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain a "short and plain statement" of the claim showing that plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (purpose of these pleading requirements is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (cleaned up)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

---

[7] The School District also requests judicial notice of the complaint in this case and an EEOC website description of the time limits for filing a charge of discrimination.  (ECF No. 21.3.) There is no need to take "judicial notice" of the very complaint before the court on these motions to dismiss, and the court relies on the relevant administrative exhaustion statutes and regulations rather than the EEOC's general summary of them.  The request for judicial notice is denied.

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Id.

In considering a motion to dismiss for failure to state a claim, the court accepts as true all facts alleged in the complaint and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

The court must liberally construe the pleading of a self-represented litigant to determine if it states a claim and, prior to dismissal, inform the plaintiff of deficiencies in the complaint and give plaintiff an opportunity to cure them if it appears at all possible to do so.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Hebbe v. Pliler, 627 F.3d 338, 342 n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under the standard announced in Iqbal).

In ruling on a Rule 12(b)(6) motion to dismiss, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (cleaned up).  Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**DISCUSSION**

Plaintiff's complaint fails to sufficiently state a claim of any sort against any of the three defendants.  Although the complaint contains numerous factual allegations, the allegations are difficult to understand and very few suggest any form of discrimination, as opposed to frustrating

8

or hurtful experiences in the workplace.  Accordingly, the current complaint must be dismissed; but the primary question is whether there are any claims in the complaint with which plaintiff could potentially proceed so as to warrant granting leave to amend the complaint to cure the current defects as to those claims.  Because the answer to that question differs for each defendant, the court analyzes the motions to dismiss by each defendant in turn.

### A.     Claims Against Defendant Hernandez

The only claims plaintiff expressly asserts against defendant Hernandez are for violations of Title VII and the Equal Pay Act ("EPA").  (ECF No. 1 at 23-24.)  Although plaintiff does not specify which defendant(s) these claims are asserted against, they are the only two express causes of action contained in the body of the complaint.  Even broadly construing the complaint as asserting causes of action under the other two anti-discrimination statutes as well (the ADA and the ADEA),[8] all such claims must be dismissed with prejudice as to defendant Hernandez because none of these statutes impose liability on an individual who is not the plaintiff's employer.  Further, to the extent plaintiff intended to assert a state-law defamation claim against Hernandez, such a claim would be barred by the one-year statute of limitations.  Accordingly, all claims against defendant Hernandez should be dismissed with prejudice, and he should be dismissed from this action.

### 1.  *Employment Discrimination Claims*

Plaintiff's discrimination claims against defendant Hernandez fail because he is not alleged to be her employer and therefore cannot be held liable under the statutes cited in plaintiff's complaint—even leaving aside that plaintiff pleads none of the types of facts required to articulate a discrimination claim.  Title VII does not impose individual liability.  See 42 U.S.C. § 2000e–2 (placing prohibitions on "an employer," "an employment agency," or "a labor organization"); Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1058 (9th Cir. 2007) ("We have long held that Title VII does not provide a separate cause of action against supervisors or co-

---

[8] Plaintiff refers to the Genetic Information Nondiscrimination Act in the caption of her complaint but makes no further reference to that Act elsewhere in the complaint.  (See ECF No. 1 at 7.) Thus, the court does not construe the complaint as asserting a claim under that Act.

1    workers."); Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998)

2    ("[C]ivil liability for employment discrimination does not extend to individual agents of the

3    employer who committed the violations, even if that agent is a supervisory employee.").

4         The same is true for the ADEA, which largely tracks Title VII.  Miller v. Maxwell's Int'l

5    Inc., 991 F.2d 583, 587 (9th Cir. 1993) ("The liability schemes under Title VII and the ADEA are

6    essentially the same in aspects relevant to this issue; they both limit civil liability to the

7    employer."); see 29 U.S.C. § 626(b) (allowing actions against "[a]ny employer" by incorporating

8    procedures under 29 U.S.C. § 216(b)).

9         The Ninth Circuit also applies the same rule against individual liability for employment

10   discrimination to claims under the ADA.  See Walsh v. Nevada Dep't of Hum. Res., 471 F.3d

11   1033, 1038 (9th Cir. 2006) ("Because Title I of the ADA adopts a definition of 'employer' and a

12   remedial scheme that is identical to Title VII, Miller's bar on suits against individual defendants

13   also applies to suits brought under Title I of the ADA.").

14        And although the Ninth Circuit has not specifically addressed whether individual

15   supervisors can be liable for violations of the Equal Pay Act, the undersigned sees "no reason to

16   stretch the liability of individual employees beyond the [vicarious liability] principle intended by

17   Congress."  Miller, 991 F.2d at 588 (concluding that the Title VII bar on individual liability

18   extends to the ADEA); see 19 U.S.C. § 206(d)(1) ("No employer . . . shall . . . .").

19        Plaintiff affirmatively alleges throughout her complaint that her employer is the School

20   District.  (ECF No. 1 at 3 (listing SCUSD as her place of employment), 7 (referencing "my

21   employment at SCUSD"), 16 ("My salary and pay come from SCUSD . . . .").)  She expressly

22   disavows an employment relationship with Sol Aureus, the charter school where defendant

23   Hernandez is an administrator.  (Id. at 12 (stating that "Sol Aureus College Prep is not my

24   employer").)  And she never alleges any employee-employer relationship with Hernandez, nor

25   does she suggest that Hernandez was acting as the agent of the School District.  Plaintiff's

26   arguments in opposition do not persuade the court that she has any good faith basis to allege an

27   employment relationship with defendant Hernandez.  (See ECF No. 15 at 7 (contrasting her

28   employment with SCUSD against Sol Aureus's non-unionized teachers)).)  Further, at the hearing

10

1    on the motions to dismiss, plaintiff was unable to give any reason that Hernandez could be

2    understood as her employer.  Plaintiff's repeated contention that Hernandez falls "under the

3    jurisdiction" of the SCUSD does not make him any more of an employer.

4         Because plaintiff, as a matter of law, cannot bring claims against defendant Hernandez

5    under Title VII, the ADEA, the ADA, or the EPA, all such claims should be dismissed with

6    prejudice.

7              *2.  Defamation Claim*

8         It also appears from select portions of the complaint that plaintiff may be attempting to

9    assert a tort claim for defamation against defendant Hernandez.  (See ECF No. 1 at 4, 11-12.)

10   The only allegation in support of this potential claim is that Hernandez made "negative

11   comments" about plaintiff in publicly viewable board meeting minutes for the 2018-2019 school

12   year.  (Id. at 11-12, 59 (Ex. H).)

13        Under California law, defamation claims are subject to a one-year statute of limitations,

14   which begins to run upon the publication of the defamatory statement.  See Cal. Civil Code

15   § 340(c); Shively v. Bozanich, 31 Cal. 4th 1230, 1246 (2003); Bailey v. Enloe Med. Ctr.,

16   No. 2:18-CV-0055-KJM-DMC, 2021 WL 695102, at *11 (E.D. Cal. Feb. 23, 2021).  The

17   attachments to the complaint show that plaintiff contacted Sol Aureus administrators about the

18   allegedly negative comments in May 2019, so at the very latest any defamation claim accrued by

19   that date.  (ECF No. 1 at 62 (Ex. I).)  The statute of limitations therefore expired by May 2020,

20   almost a year before plaintiff filed this suit on April 27, 2021.  Any defamation claim plaintiff

21   might have had against defendant Hernandez is therefore time-barred and amendment to better

22   state the elements of this claim would be futile.

23        The undersigned therefore recommends dismissing with prejudice all claims against

24   defendant Hernandez.[9]

25   _____
     [9] At the hearing on the motions to dismiss, plaintiff expressed that she included Mr. Hernandez in
26   this suit because his actions border on criminal conduct and because he is obstructing students'
     individualized learning plans.  Although this court does hear federal criminal cases, a civil lawsuit
27   is not the way to bring criminal charges; and more importantly, plaintiff, as a private citizen
     cannot prosecute criminal charges.  And, as explained at the hearing, plaintiff can only sue for
28   legally recognized harms she, herself, has suffered; she lacks standing to sue regarding the rights

                                        11

**B.     Claims Against the School District**

The court liberally construes plaintiff's complaint to assert against the School District violations of the same four anti-discrimination statutes: the EPA, Title VII, the ADEA, and the ADA.  Unlike Mr. Hernandez, the School District is a proper defendant for such claims; but these claims fail for other reasons, based on the current pleadings.  First, the complaint fails to allege sufficient facts to plausibly suggest that the School District discriminated against plaintiff on any protected ground.  Second, although plaintiff will be allowed to amend the complaint to address that deficiency, it appears from the current allegations that most of her claims are barred by the applicable statutes of limitations.

*1.  EPA Claims*

The federal EPA prohibits sex discrimination in the form of different wages for equal work.  It provides in relevant part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, [except where the differential pay can be justified by one of four affirmative defenses].

29 U.S.C. § 206(d)(1).  Under the EPA, the plaintiff first "bears the burden to establish a prima facie showing of a sex-based wage differential," and then, "if the plaintiff is successful, the burden shifts to the employer to show an affirmative defense."  Rizo v. Yovino, 950 F.3d 1217, 1223 (9th Cir.) (noting that EPA claims, unlike Title VII claims, do not require proof of discriminatory intent), cert. denied, 141 S. Ct. 189 (2020).  The plaintiff has the burden to show "that employees of the opposite sex were paid different wages for equal work."  Freyd v. Univ. of Oregon, 990 F.3d 1211, 1219 (9th Cir. 2021) (cleaned up).  To do so, the plaintiff must identify comparator jobs "substantially equal" to her own and individual job holders of the "opposite sex" who are being paid more than she.  Id. at 1219-20.

The EPA sets a three-year statute of limitations for "willful" violations, or a two-year

---

of her students, or anyone else.

1   statute of limitations for general violations.  29 U.S.C. § 255(a).  Each discriminatory paycheck a

2   plaintiff receives "constitutes a separate violation of the EPA with a cause of action accruing (and

3   the running of the limitations period commencing) upon the receipt of the discriminatory

4   paycheck."  O'Donnell v. Vencor Inc., 466 F.3d 1104, 1113 (9th Cir. 2006).  However, a plaintiff

5   may not "recover back pay for discriminatory pay periods outside the applicable statute of

6   limitations period" even when the plaintiff alleges a continuing violation.  Id.

7          Under her labeled EPA cause of action, plaintiff simply incorporates by reference all

8   sixteen prior pages of her complaint and says they show a violation of her "civil rights."  (ECF

9   No. 1 at 23.)  This is far too general to state a claim of any sort, and in any event the preceding

10  paragraphs of the complaint do not include facts that would support an EPA claim.  Plaintiff

11  alleges "inconsistent" salary payments she received for her 2017 and 2018 school years and

12  continuing problems with getting paid on time and in the correct amounts.  (ECF No. 1 at 16, 19.)

13  However, plaintiff nowhere suggests that there was ever a "sex-based wage differential."  See

14  Rizo, 950 F.3d at 1223 (emphasis added).  Plaintiff, who identifies herself as a female certificated

15  special education teacher (ECF No. 1 at 4, 8), does not describe any SCUSD special education

16  teachers of a different gender who were paid more than she.  Therefore, plaintiff has not carried

17  her required initial burden.

18         Plaintiff will get the chance to fix this pleading problem by amending the complaint.

19  However, in amending the complaint, plaintiff is advised that she may only bring EPA claims

20  against the School District that fall within the relevant statute of limitations.  If plaintiff is

21  asserting intentional, "willful," wage discrimination by the School District, she may only bring

22  EPA claims based on discriminatory wage payments received within three years of filing this

23  complaint—that is, on or after April 27, 2018 (unless she presents an argument for tolling—that

24  is, extending—the limitations period).  See 29 U.S.C. § 255(a).  If asserting non-willful wage

25  discrimination, the cut-off date (again, absent tolling) would be April 27, 2019.  See id.

26         Contrary to the School District's argument (ECF No. 21.1 at 9), the complaint can be

27  construed as attempting to allege pay discrimination continuing beyond April 2019 when plaintiff

28  went on leave.  (See ECF No. 1 at 4 (indicating discrimination continuing through filing of the

complaint), 19 (asserting pay issues "this school year").)[10]  Accordingly, amendment of the EPA

claims is not conclusively futile at this point.  Still, unless plaintiff can show a good reason to

extend/toll the statute of limitations, her EPA claims stemming from paychecks received before

April 27, 2018 are time-barred.  See O'Donnell, 466 F.3d at 1113 (plaintiffs may not "recover

back pay for discriminatory pay periods outside the applicable statute of limitations period" even

when alleging a continuing violation).

### 2. Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against

employees on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).

Because of the lack of relevant facts in the complaint, it is difficult to tell what form of

discrimination plaintiff is alleging, but based on the checkboxes in the form complaint, she seems

to assert disparate treatment.  (See ECF No. 1 at 4 (asserting failure to promote, unequal

conditions of employment); see also id. at 22 (denial of employment opportunities).)

Disparate treatment occurs when an employer intentionally treats an employee less

favorably than other employees due to a protected characteristic.  Wood v. City of San Diego, 678

F.3d 1075, 1081 (9th Cir. 2012).  To state a prima facie case of disparate treatment discrimination

under Title VII, a plaintiff must show that (1) she is a member of a protected class; (2) she was

qualified for and was performing her job satisfactorily; (3) she experienced an adverse

employment action, such as demotion or denial of an available job; and (4) similarly situated

persons outside her protected class were treated more favorably, or other circumstances

surrounding the adverse employment action give rise to an inference of discrimination.  Kennedy

v. Bremerton Sch. Dist., 991 F.3d 1004, 1021 (9th Cir. 2021).

Judging by the checkboxes on plaintiff's form complaint, plaintiff seems to be asserting

Title VII claims against the School District for discriminating against her based on her race, sex,

and religion.  (ECF No. 1 at 4, 23-24.)  Similar to the substantive problem with her EPA claims,

the main problem with plaintiff's Title VII claims is that she fails to identify similarly situated

---

[10] At the hearing on the motions to dismiss, plaintiff confirmed that she took leave from April to June 2019 but then resumed teaching.

comparators, that is, persons of a different sex/race/religion than she and who the School District treated more favorably.  See Beck v. United Food & Com. Workers Union, Loc. 99, 506 F.3d 874, 882 (9th Cir. 2007) (discrimination claims require that the plaintiff "was singled out and treated less favorably than others similarly situated on account of race or any other" impermissible category).  Currently, the only legally recognizable adverse employment action alleged in the complaint is that at various times over plaintiff's career, she was "[d]enied employment opportunities" for various positions she applied for within the district.  (ECF No. 1 at 22.)  However, plaintiff does not include allegations suggesting that she was passed over for these jobs in favor of any particular similarly situated applicant with different traits than she—for instance, a man, a non-Catholic person, or a person who was not part-Japanese.  (Cf. id. at 4.)

With respect to these alleged denials of job opportunities, plaintiff also fails to describe the job denials with enough detail to satisfy Rule 8.  See Fed. R. Civ. P. 8(a); Twombly, 550 U.S. at 555 (pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (cleaned up)).  Should plaintiff amend the complaint, she must explain the events leading up to and surrounding the job denials, when they occurred, who was involved, and why she believes discrimination was part of the reason she was not hired.

The many other frustrations and difficulties plaintiff alleges experiencing with the School District do not, as currently alleged, amount to adverse employment actions remediable under Title VII.  Title VII is not a "general civility code."  Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).  The Ninth Circuit defines an adverse employment action as one that "materially affects the compensation, terms, conditions, or privileges of employment."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (cleaned up).  Thus, for instance, it is not clear how the School District's refusal to release unrecognized computer files to plaintiff constitutes an adverse employment action—even assuming plaintiff had included facts showing such refusal to be motivated by discrimination.  (See ECF No. 1 at 17-18.)  Similarly, although regrettable, plaintiff's experiences of rudeness and social slights by her co-workers neither constitute an adverse employment action, nor is there any indication they were based on impermissible

discrimination.  Notably, at the hearing on the motions to dismiss, the only form of discrimination plaintiff could identify is that she and another unionized SCUSD teacher working at Sol Aureus were treated less favorably than those employed directly by Sol Aureus.  Unionization status is not a protected category under Title VII, which (again) applies only to discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Thus, should plaintiff amend her complaint and continue to pursue a Title VII claim, she must allege facts suggesting discrimination based on one of these protected categories.

As with the EPA claims, plaintiff will get the chance to fix these pleading problems by amending the complaint.  However, in amending the complaint, plaintiff is similarly advised that she may only bring Title VII claims against the School District that fall within the statute of limitations.

Title VII's statute of limitations requires a claimant to exhaust her administrative remedies by filing a charge of discrimination with the EEOC within specific deadlines—as applicable here, within 300 days of each alleged discriminatory act.  See 42 U.S.C. § 2000e-5(e)(1); Amtrak v. Morgan, 536 U.S. 101, 110, 119 (2002).  Plaintiff alleges that she filed her EEOC charge on October 23, 2020.  (ECF No. 1 at 5.)  Thus, the only timely Title VII claims plaintiff can assert are for conduct that occurred on or after December 28, 2019—which was 300 days before the filing of the EEOC charge.

Although the form complaint checkboxes indicate that whatever discrimination plaintiff alleges is ongoing, the complaint also suggests that most of the conduct at issue here ended at the close of the 2019 school year.  Absent a compelling tolling argument, Title VII claims regarding conduct before December 28, 2019 are time-barred.[11]  See Morgan, 536 U.S. at 112 (discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period); id. at 121 (filing period subject to equitable tolling).

---

[11] Plaintiff includes few dates regarding the positions she was denied.  However, one of the exhibits attached to the complaint indicates that at least one of plaintiff's failure-to-hire claims is time-barred because she applied around September 2016, and presumably the contested rejection followed shortly thereafter.  (ECF No. 1 at 246 (recommendation letter dated September 7, 2016 for plaintiff's application for program specialist position).)

1

### 3. ADEA Claims

2         While not explicitly asserted in the body of the complaint, plaintiff may also be attempting

3 to sue the School District for violation of the Age Discrimination in Employment Act ("ADEA").

4 (ECF No. 1 at 3, 7.)

5         The ADEA makes it unlawful for an employer to fail to hire someone—or to deprive them

6 of employment opportunities, or otherwise adversely affect their employment status—because

7 they are over 40 years old. 29 U.S.C. § 623(a)(1)-(2).  To prevail on an ADEA claim, a plaintiff

8 must ultimately prove that age was the "but-for" cause of the employer's adverse action.  Gross v.

9 FBL Financial Services, Inc., 557 U.S. 167, 176 (2009).

10         To state a prima facie case for age discrimination under the ADEA, a plaintiff must

11 plausibly allege that she was (1) at least forty years old, (2) performing her job satisfactorily,

12 (3) subject to an adverse employment action, and (4) was replaced by or treated less favorably

13 than a substantially younger employee with equal or inferior qualifications.  Diaz v. Eagle

14 Produce Ltd. P'ship, 521 F.3d 1201, 1207-08 (9th Cir. 2008).

15         Although plaintiff alleges that she was over 40 at the time of at least some of the incidents

16 at issue, her ADEA claims suffer from the same defects as her Title VII claims.  First, she does

17 not allege more favorable treatment of any other employee, much less one who is similarly

18 situated to her and substantially younger.  And second, she does not adequately describe an

19 adverse employment action.

20         Like Title VII, the ADEA also requires a claimant to exhaust her administrative remedies

21 by filing an EEOC charge within specific deadlines—as applicable here, within 300 days of each

22 alleged discriminatory act. 29 U.S.C. § 626(d)(1)(B); see Callahan v. Washoe Cty. Sch. Dist.,

23 692 F. App'x 885, 886 (9th Cir. 2017) (affirming dismissal of ADEA claim as time-barred for

24 failure to file EEOC charge within 300 days of occurrence of discrimination).  For the same

25 reasons discussed for the Title VII claims, the only timely ADEA claims plaintiff can assert are

26 for conduct that occurred on or after December 28, 2019.

27

### 4. ADA Claims

28         Lastly, plaintiff may also be attempting to sue the School District for violation of the

17

1    Americans with Disabilities Act ("ADA").  (ECF No. 1 at 3, 7.)

2         The ADA provides that "[n]o covered entity shall discriminate against a qualified

3    individual on the basis of disability in regard to job application procedures, the hiring,

4    advancement, or discharge of employees, employee compensation, job training, and other terms,

5    conditions, and privileges of employment."  42 U.S.C. § 12112(a); Gribben v. UPS, 528 F.3d

6    1166, 1169 (9th Cir. 2008).  Under the statute, the term "covered entity" means an employer,

7    employment agency, labor organization, or joint labor-management committee.  42 U.S.C.

8    § 12111.  To state a prima facie case for failure to accommodate under the ADA, a plaintiff must

9    show that (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able

10   to perform the essential functions of the job with reasonable accommodation; and (3) she suffered

11   an adverse employment action because of her disability.  Samper v. Providence St. Vincent Med.

12   Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012).

13        Here, plaintiff indicates—without any explanation—that she was discriminated against

14   for her "ADHD" disability (or perceived disability).  (ECF No. 1 at 4.)  Even assuming this

15   qualifies as a disability under the ADA, this claim suffers from the same defects as her Title VII

16   and ADEA claims.  First, plaintiff does not allege more favorable treatment of any other

17   employee, much less one who is not living with a disability.  And second, she does not adequately

18   describe an adverse employment action.

19        In amending the complaint, plaintiff is advised that the ADA incorporates the procedural

20   requirements of Title VII, including its statute of limitations requiring an EEOC charge to be filed

21   within 300 days of the discriminatory conduct (again, subject to equitable tolling).  42 U.S.C.

22   § 12117(a) (adopting Title VII enforcement procedures, including 42 U.S.C. § 2000e-5); Santa

23   Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000), overruled on other grounds by Socop-

24   Gonzalez v. INS, 272 F.3d 1176, 1194-96 (9th Cir. 2001) (en banc).  Therefore, as with the

25   Title VII and ADEA claims, any ADA claims regarding conduct before December 28, 2019 are

26   time-barred, absent a compelling tolling argument.

27        *5.  Conclusion*

28        For the above reasons, the undersigned recommends dismissing all claims against the

18

1  School District for failure to state a claim, but permitting plaintiff to amend the above-referenced

2  claims against the School District as to any conduct that is not time-barred.  Unless plaintiff

3  presents a good faith basis for tolling the applicable statutes of limitations, that means plaintiff

4  may amend to assert claims based on conduct occurring on or after April 27, 2018 for any EPA

5  claims, and conduct occurring on or after December 28, 2019 for any Title VII, ADEA, or ADA

6  claims.

7       **C.    Claims Against the Union**

8       As to the final defendant, the SCTA/Union, the most generous reading of the complaint is

9  that it asserts against the Union violations of the EPA, Title VII, the ADEA, and the ADA—along

10  with a claim that the Union breached its duty of fair representation ("DFR").  The four anti-

11  discrimination claims fail for reasons similar to those addressed with the prior two defendants,

12  and any DFR claim is barred in this court because such claims belong to a specifically assigned

13  state agency.[12]

14       *1.  EPA Claims*

15       Assuming plaintiff intended to bring an Equal Pay Act claim against the Union, such

16  claim should be dismissed with prejudice because the EPA does not apply to labor

17  organizations—except when they are acting as an employer.  See 29 U.S.C. § 203(d)

18  ("'Employer' includes any person acting directly or indirectly in the interest of an employer in

19  relation to an employee and includes a public agency, <u>but does not include any labor organization</u>

20  (other than when acting as an employer) or anyone acting in the capacity of officer or agent of

21  such labor organization." (emphasis added)).  As discussed with regard to defendant Hernandez,

22  the complaint clearly identifies the School District as plaintiff's employer—not the Union.

23       *2.  Title VII, ADEA, and ADA Claims*

24       Assuming plaintiff intended to bring claims under the other three anti-discrimination laws

25  against the Union, those claims should be dismissed with prejudice for failure to exhaust

26  

27      [12] Although the Union argues that the complaint should be construed as asserting only DFR

28  claims—due to the lack of allegations of discrimination directed at the Union—the court opts to treat the complaint as asserting both anti-discrimination and DFR claims in light of the ambiguity.

1  plaintiff's administrative remedies as to the Union.

2      Initially, the anti-discrimination protections of these laws do extend to non-employer labor

3  organizations like the SCTA.  See, e.g., 42 U.S.C. § 2000e-2(c); Beck, 506 F.3d at 882.

4  However, plaintiff alleges no facts suggesting that the Union discriminated against her, either in

5  failing to resolve her various grievances with the School District, or otherwise.  Dismissal would

6  be warranted on this ground alone, although this problem could conceivably be addressed through

7  amendment of the complaint.  Still, another obstacle prevents plaintiff from proceeding with

8  Title VII, ADEA, or ADA claims against the Union at this point.

9      As discussed regarding the statute-of-limitations issues above, these laws require a

10  plaintiff to first file a charge of discrimination with the EEOC before filing suit in court.  See

11  29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 2000e-5(b), (e)(1) (Title VII); 42 U.S.C. § 12117(a)

12  (ADA); Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 395 (2008) (ADEA); Jasch v. Potter, 302

13  F.3d 1092, 1094 (9th Cir. 2002) (Title VII); Santa Maria, 202 F.3d at 1176 (ADA).  The purpose

14  of the exhaustion rule is to ensure that a party has an opportunity to respond to the charges against

15  it before the EEOC.  Ranza v. Nike, Inc., 793 F.3d 1059, 1076 (9th Cir. 2015).

16      Generally, therefore, "failure to timely name a party in an EEOC filing deprives [the

17  court] of jurisdiction over that party."  Id.  There are exceptions, however, when an unnamed

18  party either (a) was "involved in the acts giving rise to the E.E.O.C. claims," Sosa v. Hiraoka, 920

19  F.2d 1451, 1459 (9th Cir. 1990), or (b) "was on notice of the filing and should have anticipated

20  that the claimant would name the party" in a forthcoming suit, Ranza, 793 F.3d at 1076 (cleaned

21  up), among others.

22      Attached to the instant complaint is a copy of the Right to Sue Letter that the EEOC

23  issued to plaintiff.  (ECF No. 1 at 27.)  Although a copy of the submitted charge is not attached,

24  the Right to Sue Letter itself reflects that only one party was formally named in the charge—

25  listing only SCUSD in the "CC" field.  (Id.)  Plaintiff confirmed at the hearing on the motions to

26  dismiss that the only party she named in the EEOC charge was SCUSD.  The court sees no reason

27  to infer from the current complaint that the Union was involved in the complained-of conduct by

28  the School District; rather, it seems plaintiff turned to the Union to resolve her issues with the

1   School District.  Accordingly, the Union was neither given an opportunity to respond to the

2   EEOC regarding whatever charges of discrimination plaintiff might be asserting against the

3   Union—nor could it anticipate that it would be sued for that discrimination.  Accordingly, even if

4   plaintiff is asserting claims under Title VII, the ADEA, or the ADA against the Union, the court

5   would not have subject matter jurisdiction over such claims (for failure to exhaust them as to the

6   Union)—and they should be dismissed without leave to amend.

7           3.  *DFR Claims*

8           Although the complaint does not expressly assert a "duty of fair representation" claim

9   against the Union, that is the claim that the few substantive allegations directed toward the Union

10  come closest to asserting.  (See ECF No. 1 at 11 (SCTA-provided attorney did not adequately

11  pursue resolution of concerns), 12 (receiving no response from SCTA regarding certain

12  concerns), 16 (same), 20 (the Union "do[es]n't enforce anything").)  So construing the complaint,

13  the undersigned concludes that this claim cannot proceed in this court because such disputes lie

14  within the exclusive jurisdiction of the California Public Employment Relations Board ("PERB").

15          As explained by one sister district court:

16              The California Education Employment Relations Act ("EERA")
17              "governs employer-employee relations within public school
                systems."  Pers. Comm'n. v. Barstow Unified Sch. Dist., 43 Cal.
18              App. 4th 871, 885 (1996). As part of the EERA, the Legislature
                established the PERB, which "provides an administrative remedy for
19              unfair practices and violation[s] of [the EERA]" and "has certain
                rights, powers, duties and responsibilities, including . . . investigating
20              unfair practice charges, holding hearings, subpoenaing witnesses,
                administering oaths, taking testimony . . . and bringing an action in a
21              court of competent jurisdiction to enforce any of its orders, decisions
                or rulings."  Cal. Teachers' Ass'n. v. Livingston Union Sch. Dist.,
22              219 Cal. App. 3d 1503, 1509 (1990) (quotations omitted) (citing Cal.
                Gov. Code § 3541.3); Wygant v. Victor Valley Joint High Sch. Dist.,
23              168 Cal. App. 3d 319, 322 (1985) (citing Cal. Gov. Code
                § 3451.3(i)); Anderson v. Cal. Faculty Ass'n., 25 Cal. App. 4th 207,
24              212 (1994) (citing Cal. Gov. Code § 3563).

25              "Where unfair practices are alleged by [a] plaintiff, '[t]he initial
                determination as to whether the charges of unfair practices are
26              justified, and, if so, what remedy is necessary . . . shall be a matter
                within the exclusive jurisdiction of the [PERB].'" McCammon v. Los
27              Angeles Unified Sch. Dist., 195 Cal. App. 3d 661, 664 (1987)
                (quoting Cal. Gov. Code § 3541.5). The "PERB's exclusive
28              jurisdiction is not limited to cases in which it is clear that an EERA
                violation is involved," however. Id. "Rather, in applying section

                                        21

3541.5 to situations dealing with employment disputes, courts have permitted [the PERB] to retain exclusive jurisdiction [over] disputes which arguably could give rise to an unfair practice claim." <u>Pers. Comm'n. v. Barstow Unified Sch. Dist.</u>, 43 Cal. App. 4th at 885-86 (quotations omitted) (citing <u>Los Angeles Council of Sch. Nurses v. Los Angeles Unified Sch. Dist.</u>, 113 Cal. App. 3d 666, 672-73 (1980) (upholding dismissal of action against UTLA for breach of duty of fair representation because "the dispute alleged by the appellants could have constituted unfair practices")). This language is interpreted broadly. <u>Id.</u> at 886 (citations omitted).

Government Code sections 3543.5 and 3543.6 set forth conduct constituting unfair practices by employers or employee organizations. <u>Pers. Comm'n. v. Barstow Unified Sch. Dist.</u>, 43 Cal. App. 4th at 885; <u>Anderson v. Cal. Faculty Ass'n.</u>, 25 Cal. App. 4th at 212 (citing Cal. Gov. Code § 3563.2). A union's breach of the duty of fair representation "is listed as an unfair practice over which PERB has exclusive jurisdiction." <u>Anderson v. Cal. Faculty Ass'n.</u>, 25 Cal. App. 4th at 212 (quoting Cal. Gov. Code §§ 3571.1(e), 3578). "Because [the] violation of the duty of fair representation is defined in [ ]EERA as an unfair practice, [the] PERB has exclusive jurisdiction over any such dispute." <u>Id.</u> (citing <u>Los Angeles Council of Sch. Nurses v. Los Angeles Unified Sch. Dist.</u>, 113 Cal. App. 3d at 672).

<u>Stevenson v. Los Angeles Unified Sch. Dist.</u>, No. CV-09-6497-ODW-PLAx, 2010 WL 11596479, at *3-4 (C.D. Cal. June 28, 2010).

Because the School District is a public school employer, plaintiff is a public school employee, and the Union is the exclusive representative, the EERA applies here. Plaintiff's only discernable substantive allegations against the Union concern the quality and adequacy of the representation it provided regarding her employment concerns. These allegations amount to an unfair practice claim that the Union breached its duty of fair representation. The PERB has exclusive jurisdiction over such claims, and therefore amendment of the complaint in this court would be futile.

Accordingly, the Union's motion to dismiss should be granted, and all claims against the Union should be dismissed without leave to amend. Such dismissal is without prejudice to plaintiff bringing her DFR claims before the PERB.[13]

---

[13] As a courtesy to plaintiff, counsel for the Union agreed that, if plaintiff emails him a written request for the pay stubs and pay scales she is seeking, he and the Union will work with counsel for the School District to send plaintiff the requested documents.

22

### D.     Leave to Amend

When a court finds that a complaint or claim should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend.  Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987))).

If plaintiff elects to file an amended complaint, this new pleading shall be captioned as the "First Amended Complaint" and shall name only the School District as a defendant, unless plaintiff first obtains leave of court to name additional parties.  Any First Amended Complaint must set forth each of plaintiff's claims in separate sections that clearly identify what legal cause of action is being asserted.  Within each claim, plaintiff must succinctly specify who did what, when the events occurred, how she was treated less favorably than others similarly situated, and how she was harmed by the alleged conduct.

Plaintiff is additionally cautioned that the court cannot refer to a prior complaint or other filing in order to make an amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint, and once an amended complaint is filed, the prior complaint no longer serves any function in the case.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. **Within thirty (30) days** of the date of the District Judge's forthcoming order regarding the enclosed findings and recommendations, plaintiff shall (A) file a First Amended Complaint that complies with the above instructions, or (B) notify the court that she is voluntarily dismissing this action;

////

2. Failure to file a First Amended Complaint within this time, or to request an extension of time, will result in a recommendation that this case be dismissed with prejudice for failure to comply with a court order, under Fed. R. Civ. P. 41(b).

### RECOMMENDATION

Further, for the above reasons, it is HEREBY RECOMMENDED that:

1. Defendants' motions to dismiss for failure to state a claim (ECF Nos. 12, 18, 21) should be GRANTED;

2. All claims against defendant Hernandez should be dismissed without leave to amend, and Hernandez should be dismissed from the action;

3. All claims against defendant Sacramento City Teachers Association should be dismissed without leave to amend, and the SCTA should be dismissed from the action;

4. All claims against defendant Sacramento City Unified School District should be dismissed, with leave to amend to state any timely claims plaintiff may have against SCUSD, addressing the deficiencies identified above; and

5. Following the District Judge's ruling on these findings and recommendations, the case should be referred again to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may

////

////

////

////

24

1    waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

2    Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

3    Dated:  October 14, 2021

4                                                    _____
                                                     CAROLYN K. DELANEY
5                                                    UNITED STATES MAGISTRATE JUDGE

6

7

8    19.mill.757

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    25